L. S. GOOD & COMPANY, a corporation,
Plaintiff,

v.

H. DAROFF & SONS, INC., a corpo-
ration, Defendant.

Civ. A. No. 1547–W.

United States District Court
N. D. West Virginia.

Jan. 25, 1968.

Jeremy C. McCamic, Wheeling, W. Va., for plaintiff.

Sam E. Schafer, Wheeling, W. Va., Harry Norman Ball and H. Donald Busch, Philadelphia, Pa., for defendant.

MAXWELL, Chief Judge.

This case is now before the Court on defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief may be granted. A similar motion was made to the original complaint and this Court, in granting that motion, allowed the plaintiff 30 days to amend its complaint "so as to set forth a cause of action based on the common law." L. S. Good & Company v. H. Daroff & Sons, Inc., 263 F.Supp. 635, 638 (N.D.W.Va.1967). The primary reason for permitting the plaintiff to amend its complaint was the valid conclusion, in the memorandum opinion of February 2, 1967, that the defendant was properly before the Court, and this Court felt that it was not improper to afford the plaintiff an opportunity to attempt to state a common law cause of action.

The plaintiff, pursuant to an order of this Court dated March 7, 1967, filed an amended complaint setting forth two causes of action.

The plaintiff's first cause of action is largely a re-working of its original complaint earlier considered by this Court and found defective. The major change is that the plaintiff, in apparent conformity with the Court's opinion, alleges that

" * * * one Morley Bernhardt, a retail merchant of men's clothing and a large customer of the defendant, whose place of business is located in Rockford, Illinois * * * "

and used the purchasing leverage of his Illinois store to influence the defendant to grant an exclusive dealership to Bernhardt's of Wheeling in preference to the plaintiff. It is alleged that Morley Bernhardt is part-owner of Bernhardt's in Wheeling.

The defendant argues that these allegations fall squarely within the holding of Packard Motor Car Co. v. Webster Motor Car Co., 100 U.S.App.D.C. 161, 243 F.2d 418 (1957), cert. denied 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38, rehearing denied 355 U.S. 900, 78 S.Ct. 259, 2 L.Ed.2d 197.

The Packard case is distinguishable from the case at bar in that in Packard there was no allegation of a vertical agreement between a manufacturer and a dealer to eliminate another dealer. The distinguishing fact does not necessarily compel a different result. The case of Schwing Motor Co. v. Hudson Sales Co., 138 F.Supp. 899 (D.Md.1956), affirmed 239 F.2d 176 (4th Cir. 1956) seems to be dispositive of the first cause of action set forth in the amended complaint. The question presented in the Schwing case was:

" * * * Whether an agreement between an automobile manufacturer and a retail dealer, pursuant to which the manufacturer refuses to renew expiring agreements with two other dealers, and gives the dealer a 'virtual monopoly' of the sale of one make of automobile in one city, is a combination or conspiracy to monopolize trade or commerce, or in restraint of trade or commerce in violation of the Sherman Act and of the Clayton Act." 138 F.Supp. at 900.

The factual situation in Schwing is quite similar to the case now before the Court. There a dealer brought pressure upon a manufacturer to "drop" other dealers in the area and make it the sole outlet for the manufacturer's products. Judge Thomsen held that this was not illegal since the action was based on "the natural monopoly which a manufacturer has in his own product." Also, the fact that the manufacturer and the preferred dealer discussed the matter before the decision was made did not, in the Schwing case, affect the outcome.

The holding in Schwing was in large measure premised on the fact that the alleged agreement was between a relatively small manufacturer in a highly competitive field and a local dealer whom, for one reason or another, the manufacturer wished to retain.

■ Ever since the classic cases of Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, and United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663, the law has been that only those restraints on interstate commerce which are undue or unreasonable are prohibited. "The Act does not cover restraints that are merely incidental, casual and immaterial." Lawson v. Woodmere, 217 F.2d 148, 151 (4th Cir. 1954).

■ This Court discussed at some length, in its earlier opinion, the market situation in men's clothing. In order to recover, the plaintiff would have to prove that the actions taken by the defendant tended "unreasonably" to restrain interstate commerce. It is not sufficient under the cases for the plaintiff to prove only that there was a restraint of interstate commerce. The complaint must allege facts "from which it can be determined that the conduct charged to be in violation of the anti-trust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." 138 F. Supp. at 903. It is the opinion of this Court that the plaintiff could not meet this burden, and consequently the defendant's motion to dismiss the first cause of action in the amended complaint is granted.

The plaintiff, in the amended complaint attempts to set forth, as its second cause of action, a breach of contract claim, cognizable in this Court because of diversity of citizenship between the parties. The plaintiff alleges:

"Prior to March 27, 1965, the defendant entered into a contract with the plaintiff to fill orders sent by the plaintiff to the defendant for the 'Botany 500' line of men's wear at prices to be set by the defendant, said contract to last so long as the dealer continued to send orders in an amount considered by the defendant to be reasonable.

Relying on said contract, plaintiff expended large sums for promotion and advertising of the 'Botany 500' line and was put to other expense and at all times performed its duties under said contract and is now ready, willing and able to continue to so perform.

The defendant, on or about March 27, 1965, breached said contract by refusing to honor the orders sent by plaintiff to defendant for the said 'Botany 500' line of men's wear."

■ It seems fairly obvious from a reading of the amended complaint and the other papers on file in this action that if a contract existed between these litigants, it was a contract terminable at will.

■ If the agreement here was a contract terminable at will, the plaintiff's recovery would be limited to those sums which it spent in justifiable reliance upon the promises of the defendant, i. e., the "large sums" the plaintiff expended in promoting and advertising the Botany 500 line and the "other expense" to which the plaintiff was put in preparing to perform the alleged contract. Although loss of anticipated profits can be a proper element of recovery in suits founded upon a contract breach, the buyer is under a strong obligation to mitigate his damages. This duty, coupled with the likelihood that this was a contract terminable at will, would allow little or no recovery for this alleged injury.

■ Should it ultimately be determined that there was no contract here, the defendant could still be liable for plaintiff's "out-of-pocket" expenses upon a theory of promissory estoppel. See e. g. Goodman v. Dicker, 83 U.S.App. D.C. 353, 169 F.2d 684 (1948). On this theory there could be no recovery for loss of anticipated profits.

The motion of the defendant to dismiss is denied as to the plaintiff's second cause of action. Future discovery by the parties to this action is limited solely to the common law cause of action set forth in the amended complaint.