Dok Sin MOSES, Plaintiff,

v.

PHELPS DODGE CORPORATION,
a foreign corporation, et al.,
Defendants.

No. Civ. 91–143–TUC–JFB (WDB).

United States District Court,
D. Arizona.

March 5, 1993.

Chris J. Kimminau, Tucson, AZ, for plaintiff.

Nathan R. Niemuth and Michael D. Moberly, Ryley, Carlock & Applewhite, Phoenix, AZ, for defendants.

## MEMORANDUM & ORDER

BATTIN, Senior District Judge.

Pending before Court is Defendants' Motion for Summary Judgment. For the reasons stated below, the motion is granted.

## FACTS AND PROCEDURAL BACKGROUND

Plaintiff was hired by Defendant Phelps Dodge Corporation ("Phelps") on March 20, 1984, and worked there for over five years as a cleaning laborer. Plaintiff alleges that in 1987, Phelps was partially acquired by a Japanese company. Thereafter Plaintiff, one of only two Asian employees in her department, was harassed by other employees because of her race. Additionally, Plaintiff alleges that she was harassed and forced to work in a hostile environment because of her refusal to participate in social activities with other employees.

In January, 1989, Plaintiff was assaulted at her home by a co-employee, Rose Davis. Afterwards, Plaintiff complained of the incident to her supervisor, and the co-employee was disciplined by Phelps. Plaintiff was apparently unaware that disciplinary action had been taken by her employer.

Plaintiff was terminated from her job in June, 1989. Phelps contends that Plaintiff was terminated for insubordination, based upon her failure to obey a supervisor's directions. Plaintiff, on the other hand, contends that there was a discriminatory motive for the firing.

After the firing, Plaintiff initially invoked the "Problem Solving Procedures" set forth in her Employee Handbook. However, she withdrew her complaint prior to completing that process. Plaintiff alleges that the internal complaint was withdrawn because of acts of retaliation against her husband, who still worked for Phelps, and because of her fears for the safety of her family.

On January 4, 1991, Plaintiff filed a discrimination charge with the Arizona Civil Rights Division. The charge was referred to the EEOC, pursuant to a work sharing agreement between the two agencies, and was thereafter dismissed as untimely. On April 16, 1991, Plaintiff filed an amended charge of discrimination, which alleged more recent acts of retaliation against her husband.

Plaintiff filed the present action on January 2, 1992, in Arizona Superior Court, Pima County. The case was removed to federal district court on March 4, 1992. Defendants now seek summary judgment in their favor on all eight counts of Plaintiff's Complaint. The Court has carefully considered the briefs and supporting materials submitted by the parties, and the oral arguments of counsel. Having done so, the Court is now prepared to rule.

## DISCUSSION

First, the Court finds it instructive to review the standards applicable to motions for summary judgment. Rule 56(c), Fed.R.Civ. P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987). If the moving party adequately carries its burden, then the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the Court's ultimate inquiry is to determine whether the

"specific facts" set forth by the nonmoving, viewed along with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *Id.* at 631. Having so stated, the Court now turns to the merits of the pending motion.

In this case, Plaintiff asserts the following claims:

Count I: Violation of Title VII and Arizona Civil Rights Act ("ACRA")

Count II: Harassment

Count III: Wrongful Discharge

Count IV: Breach of Contract

Count V: Interference with Contract

Count VI: Negligent Infliction of Emotional Distress

Count VII: Assault

Count VIII: Negligent Supervision

Defendants seek summary judgment in their favor on the claims set forth at Counts I–III, and V–VIII, on statute of limitation grounds. Defendants also seek summary judgment in their favor on Count IV, on the ground that Plaintiff did not exhaust her remedies under the Employee Handbook.

### I. *Statute of Limitation*

■ Plaintiff agrees that the claims set forth in Counts II, III, and V–VIII are governed by the two year limitation period set forth at A.R.S. § 12–542, and that they are therefore time barred unless the Court finds that the running of the limitation period was equitably tolled. Likewise, Plaintiff also concedes that she did not file a charge of discrimination within the time periods set forth under Title VII and the ACRA. *See* 42 U.S.C. § 2000e–5(e) and A.R.S. § 41–1481.A. Thus, the discrimination claims set forth at Count I are also time barred unless the doctrine of equitable tolling applies.

Plaintiff contends that the applicable limitation periods were equitably tolled in this case because of past harassing conduct by Defendants, and continuing retaliation by Defendants against her husband, which discouraged her from asserting her legal rights in a timely fashion.[1]

■ Essentially, Plaintiff asserts that the running of the applicable limitation periods should be equitably tolled because of duress. At the outset, the Court notes that equitable relief from limitation periods is "typically extended ... only sparingly." *Irwin v. Veterans Administration,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990); *Scholar v. Pacific Bell,* 963 F.2d 264, 267 (9th Cir.1992). Although duress is a recognized basis for equitably tolling a statute of limitation, it is limited in its application. Almost without exception, "courts have universally rejected the theory that duress tolls the statute of limitations when, as here, duress is not an element of the underlying cause of action." *Pahlavi v. Palandjian,* 809 F.2d 938, 942 (1st Cir.1987); *see generally* 54 C.J.S. *Limitation of Actions,* § 92 (1987).

Assuming that the Arizona courts would recognize duress as tolling the statute of limitation in certain circumstances, Plaintiff herein has failed, as a matter of law, to establish facts to justify equitable tolling in this case. First, duress is not an element of any of the claims asserted by Plaintiff, so as a matter of law duress is not sufficient to toll the running of the limitation periods.

■ Moreover, as a factual matter, Plaintiff has failed to set forth specific facts establishing duress. To establish duress sufficient to toll the running of the limitation periods and defeat Defendants' motion for summary judgment, Plaintiff must do more than simply allege a subjective fear that retaliation might occur. Instead, Plaintiff must show some act or threat by the Defendants that precluded the exercise of her free will and judgment, and prevented her from exercising her legal rights. *See U.S. Life & Title Co. v. Gutkin,* 152 Ariz. 349, 732 P.2d 579 (App. 1986).

Plaintiff points to the earlier assault by a co-employee, to demonstrate a basis for her subjective fears for her physical safety and that of her family. However, the assault occurred over five months prior to her discharge. Plaintiff complained of the incident

---

1. In her brief, Plaintiff also contended that the applicable limitation periods were equitably tolled based on what is known as the "discovery rule", arguing that the running of the limitation periods did not commence until Plaintiff discovered the discriminatory conduct. However, at the time of oral argument, Plaintiff conceded that the discovery rule does not apply in this case.

to her supervisor, and the record shows that the perpetrator of the assault was disciplined by Phelps as a result of the incident. There is no evidence of similar incidents, either during Plaintiff's employment or after her termination, during the running of the various limitation periods.

Although Plaintiff alleges continued harassment by her fellow employees during the course of her employment, Plaintiff does not appear to have been intimidated into silence, since she complained to her supervisors on numerous occasions about the harassment. Moreover, after Plaintiff's termination from employment, she and her children moved to Phoenix, Arizona. Plaintiff therefore was no longer subjected to the alleged harassment in the workplace, and removed herself from the likelihood of further physical violence. Thus, as a matter of law, the conduct of her co-employees, occurring *during* her employment, did not constitute the sort of continuing, dire and imminent threat which would serve to equitably toll the running of the limitation period *after* her termination in June, 1989.

With respect to the alleged harassment of Plaintiff's husband after her termination, there is no persuasive evidence that Defendant engaged in any retaliatory conduct against Plaintiff's husband, to dissuade Plaintiff from asserting her legal rights. Nor is there evidence of any post-termination threats of retaliation or reprisal against other members of Plaintiff's family. Instead, Plaintiff has inferred, from her husband's demeanor and behavior, that some sort of harassment occurred.

Even assuming that Plaintiff's intuition was correct, there is not sufficient evidence from which the Court may find that the Defendants' conduct rose to the level necessary to toll the applicable statutes of limitation. In the absence of evidence of specific acts by Defendants which were sufficiently coercive or threatening in nature to preclude the exercise of Plaintiff's free will and judgment and prevent her from exercising her legal rights after her termination, the doctrine of equitable tolling simply does not apply. *See Pahlavi,* 809 F.2d at 941–42; *Crandall v. Prudential Ins. Co.,* 691 F.Supp. 814 (D.N.J.1988).[2] Because the facts alleged cannot reasonably be construed to permit tolling of the applicable statutes of limitation, summary judgment is properly granted in favor of Defendants. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 595 (9th Cir.1981).

## II. *Failure to Exhaust Remedies*

Defendant seeks summary judgment on Count IV of Plaintiff's Complaint, asserting a claim for breach of contract, arguing that Plaintiff is precluded from bringing such a claim because she failed to exhaust the grievance mechanisms set forth in the Employee Handbook governing her employment with Phelps. That handbook details a procedure for the internal resolution of employment-related problems.

Plaintiff opposes summary judgment, contending that the problem solving procedures were permissive, not mandatory, and that she was therefore not required to exhaust them. Plaintiff also contends that although she was provided with a copy of the Handbook, she did not consent to the problem solving procedures as an exclusive remedy. Both of Plaintiff's positions on this issue are belied by the unambiguous language of the Handbook and the undisputed facts of record.

First, although the Handbook affords employees some latitude in deciding which of two problem solving approaches to pursue first ( (the "Open Door Policy" or the more formal "Problem Solving Procedure"), the Handbook also clearly and unambiguously provides that

> "[t]he avenues of communication and problem solving set forth in this Employee Handbook *constitute the sole and exclusive procedure* for the processing and resolution of any controversy, complaint, misun-

2. In fact, in her Amended Charge of Discrimination, filed on April 16, 1991, Plaintiff alleged that the last act of harassment against her husband "[occurred] on or about January 15, 1991." Plaintiff contends that this continuing harassment is what prevented her from filing a timely charge of discrimination. Yet, it is clear that Plaintiff was not in fact prevented from asserting her legal rights, since she filed her first charge on January 4, 1991, while the alleged harassment was still occurring.

derstanding or dispute that may arise concerning any aspect of your employment or termination from employment. (emphasis added).

On October 23, 1985, and again on September 15, 1988, Plaintiff acknowledged, in writing, that she had received a copy of the Handbook, and that she agreed to "follow the policies, procedures, rules and regulations of the Company." She also manifested her agreement to that provision by continuing her employment after receiving a copy of the Handbook. *See e.g. Chambers v. Valley Nat. Bank of Arizona,* 721 F.Supp. 1128, 1131–32 (D.Ariz.1988). Plaintiff's present attempt to avoid the clear implication of these provisions is not well taken.

Plaintiff has acknowledged the contractual nature of the Employee Handbook by relying upon it as a basis for relief in the present lawsuit. *See* Complaint, Count IV. Because she failed to exhaust the internal procedures for dispute resolution contained in the Employee Handbook, she is precluded from now bringing suit based upon any dispute which would have been governed by those procedures. *See Thomas v. Garrett Corp.,* 744 F.Supp. 199, 203 (D.Ariz.1989).

In so ruling, the Court expresses no opinion on the merits of Plaintiff's substantive claims, holding only that the Plaintiff did not assert those claims in a timely fashion and is now precluded from doing so.

Based on the foregoing,

IT IS ORDERED that Defendants' Motion for Summary Judgment is granted. The Clerk is directed to enter judgment accordingly.

The Clerk is directed to forthwith notify counsel of record of the making of this Order.